UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

|  |  |
|---|---|
| GILLIAN K. O.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 22-cv-07019-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 17 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 28-36.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-6), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 7 & 8), and both parties have moved for summary judgment (dkts. 15 & 17). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in eight attachments to Docket Entry #13. *See* (dkts. 13-1 through 13-8).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

Proceeding *pro se*, Plaintiff submits that she has suffered from a number of well documented chronic health issues since the age of 19, and that it was error for the Commissioner to deny her application for disability benefits. *See* Pl.'s Mot. (dkt. 15) at 1. Plaintiff's summary judgment motion is limited to three sentences, however, the court's independent review of the administrative record reveals that, among other impairments, Plaintiff has been afflicted with chronic migraines, fibromyalgia, memory deficits and other cognitive manifestations of her dyscognitive seizure disorder.[3]

---

[3] The failure by a *pro se* Plaintiff, or even by an attorney, to articulate a particular error is not an acceptable reason for a reviewing court to actively ignore it in this context. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009); *Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases standing for the proposition that while a remand request is normally made by a party, there is no reason why a district court may not remand, *sua sponte*, for an error that was not fully articulated); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018) (court *sua sponte* raised issue of ALJ's failure to develop the record and reversed and remanded because it "could not ignore" a gap in record of mental health treatment); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014) ("A reviewing court may *sua sponte* address issues in social security cases").

As early as November of 2017, Plaintiff's neurologist diagnosed her with migraines and noted that "she is currently having very frequent headaches." AR at 525, 636. A few months later, in early January of 2018, Plaintiff's migraines continued to bother her. AR at 523-24, 591-92. Her treating neurologist then observed, in July of 2018, that the condition still persisted and that Plaintiff reported suffering from four to five true migraines per month. *See id*. at 587-90. A few months later, in January of 2019, she was treated again for the continuing migraines, dyscognitive spells, and memory loss. *Id*. at 519-22, 582-85. Specifically, it was noted that her focal seizures with dyscognitive features may have been related to her migraines. *Id*. at 519. Her physicians also noted that her migraines were attended with nausea and photophobia. *Id*. at 520. On this occasion, Plaintiff also reported that her memory loss rendered it difficult for her to remember daily tasks as well as remote events. *Id*. at 521. The migraine diagnosis was noted again in September of 2019, as Plaintiff continued to suffer from migraine attacks. *Id*. at 672, 741.

In January of 2020, her neurologist noted that Plaintiff had been getting headaches more often and that they were sometimes attended with a partial blurry spot in her vision. *Id*. at 730-31. In April of 2020, she reported still suffering from daily migraines, at which point her doctors characterized her migraines as chronic. *See id*. at 724-25. In July of 2020, the attacks became still more frequent. *See id*. at 696, 706. In August of 2020, her doctors noted Plaintiff's "worsening" migraines (and attendant nausea). *See id*. at 680, 683. In December of 2020, records reflect that Plaintiff still suffered from migraines that caused painful head pressure, photosensitivity, and posterior neck stiffness. *Id.* at 651, 656. Additionally, Plaintiff had noted on her disability report that her migraine medications (Imitrex and Nortriptyline) "won't get rid of a full-blown migraine," and that notwithstanding these medications, her migraines were "still happening more frequently and worsening." *Id*. at 397.

At the hearing on September 10, 2021, the ALJ heard testimony from a non-examining medical expert (Kweli Amusa, M.D.). *See id*. at 111-14. In pertinent part, the ALJ specifically asked Dr. Amusa whether or not the medical records substantiated the fact that Plaintiff "also had the headaches," to which Dr. Amusa responded in the affirmative. *Id*. at 113-14. At a previous hearing, on June 1, 2021, Dr. Amusa had noted (without identifying any specific page of

3

Plaintiff's medical records) that Plaintiff's neurologist "appears to opine" that her headaches as well as her "cognitive seizures" are "well-controlled on medication." *See id*. at 71. Dr. Amusa noted (at the June hearing) that Plaintiff's migraines (1) did not meet the 12-month durational requirement; and (2) that their frequency was not such as to medically equal listing level severity. *Id*. at 73-74. There is no indication, at either hearing, that the ALJ inquired any further into the frequency, or attendant limitations, caused by Plaintiff's migraines by either asking Plaintiff any questions about the migraines, or by otherwise seeking to develop the record in that regard. *See generally id*. at 54-138.

The record also contains numerous indications that Plaintiff suffers from fibromyalgia. *See id*. at 639, 641, 645, 651-52, 656, 658, 660, 664, 671-72, 681, 690-91, 696, 705-06, 710, 713, 726, 735-36 (Plaintiff's treating neurologist, Jill Ann Goslinga, M.D., describing Plaintiff's "longstanding fibromyalgia"), 739, 741 (Dr. Goslinga noting that Plaintiff's "fibromyalgia pain is along her paraspinals bilaterally," as well as "another pain that feels like it's in her spine itself."), 1087, and 1109. At both hearings, the ALJ asked Dr. Amusa to render an opinion about Plaintiff's fibromyalgia diagnosis, to which Dr. Amusa replied by stating that she did not see fibromyalgia "well-supported in the evidence," due to "a lack of documentation of the usual tender points or [an] evaluation by a rheumatologist for that condition." *Id*. at 72, 114.

The record also manifests issues with Plaintiff's cognitive function and memory loss. *See id*. at 651, 654, 656, 665, 668, 680, 683-84, 729, 731, 733, 735-36, 741-42, 744, and 1088. At the hearing on June 1, 2021, Plaintiff answered the ALJ's question about what items she might be able to cook by explaining that her memory problems create problems in the kitchen, causing her to burn herself frequently. *Id*. at 68. Then, while engaging Plaintiff regarding the physical elements associated with the exertion level of various types of work, Plaintiff reiterated that her memory deficits would be an issue with many types of work. *Id*. at 87. At the September 10, 2021, hearing, while the ALJ was addressing Plaintiff with a discussion about a hypothetical person in her position being able to perform as a fast-food worker or store clerk (*i.e.*, positions in which Plaintiff had been previously employed), Plaintiff stated, "I don't think I heard anything about memory problems in either [hypothetical], which is really the big one for me because I have a lot of short-

4

term memory issues." *Id*. at 135. When the ALJ asked Plaintiff to describe how her memory deficits might affect her in the workplace, she stated that "[a] lot of times I'll forget what I'm doing while I'm doing [it], which tends to be an issue." *Id*. at 136. Lastly, as to physical limitations, in May 2021, Paul Lynn, M.D. completed a Thyroid Disorder Medical Assessment Form and opined that the Plaintiff could sit, stand, and walk less than 2 hours in an 8-hour day; occasionally lift less than 10 pounds; and that Plaintiff would be absent from work more than four days a month. *See id*. at 1099-1102.

## THE ALJ DECISION

The ALJ in this case engaged in the required five step sequential evaluation process. *See id*. at 29-30. At step one, the ALJ determined Plaintiff had not performed substantial gainful activity between her alleged onset date of June 30, 2017, and March 31, 2019, her date last insured. AR at 30. At step two, the ALJ determined Plaintiff's only severe impairment was dyscognitive seizure disorder. *Id*. at 31. Mentioning an office visit in January of 2019, the ALJ found that Plaintiff's migraines were reported as being under control on that day, and thus, the ALJ found the migraines to be non-severe. *Id*. As for Plaintiff's fibromyalgia, the ALJ found it to be non-severe because of Dr. Amusa's testimony to the effect that the record did not evidence clear support for this diagnosis due to a lack of discussion of trigger points and because Plaintiff "has not been evaluated by a rheumatologist." *Id*. The ALJ made no mention of Plaintiff's memory problems at Step Two. *See id*. at 31-32. At Step Three the ALJ found that none of Plaintiff's conditions met or equaled any listed impairment. *Id*. at 32. In formulating Plaintiff's residual functioning capacity ("RFC"), the ALJ determined that Plaintiff could perform light work, with a number of physical limitations. *Id*. at 32-35. Given that the ALJ's formulation of Plaintiff's RFC was wholly inconsistent with Dr. Lynn's physical limitation opinions, the ALJ justified rejecting Dr. Lynn's opinions by stating that "Dr. Lynn does not state when the limitations first applied . . . [as] he first treated the claimant on January 20, 2021, which is nine months after the after the date last insured." *Id*. at 35. At Step Four, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a barista, fast-food worker, and salesclerk – and, a finding of non-disability was entered. *Id*. at 35-36.

5

**DISCUSSION**

The ALJ erred in this case by failing to develop the record regarding the evaluation of Plaintiff's migraines, her memory deficits and other cognitive problems associated with her seizure disorder, her fibromyalgia, and the basis and temporal applicability for Dr. Lynn's opinions as to her physical limitations. Because the ALJ did not develop the record properly, the ALJ's determinations at Step Two and beyond are not supported by substantial evidence and remand for further record development is necessary.

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings . . . [which] are inquisitorial rather than adversarial[,] [thus] [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). It is therefore well established that "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). "Given that a large portion of Social Security claimants either have no representation at all or are represented by non-attorneys (*see Sims*, 530 U.S. at 112), courts have recognized that "[w]hen the claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Indeed, "[t]he ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id*.

Initially the court will note that, in light of the voluminous evidence, *supra*, regarding Plaintiff's migraines (a condition from which she suffered for a number of years and which the record reflects was not abated by treatment), it was error for the ALJ to rely on a single notation from 2019 to conclude that the condition was "under control," and therefore non-severe. The severity evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimis* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is non-severe at step two

only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. Due to the ALJ's Step Two error, it is evident that Plaintiff's migraines were not properly accounted for at step three, during the formation of the RFC, or beyond.

Regarding the state of the record, the court finds that the record is insufficiently developed as to the limitations occasioned by Plaintiff's migraines, the particulars of her fibromyalgia diagnosis, the details underlying her memory deficits and other cognitive issues related to her dyscognitive seizure disorder, and the physical limitations opined by Paul Lynn. As to Plaintiff's memory deficits and potential cognitive limitations associated with her dyscognitive seizure disorder, on remand, the ALJ is **ORDERED** to procure a consultative psychological examination that would include the administration of the following diagnostic instruments: the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), the Wechsler Memory Scale ("WMS-IV"), and the Trail Making Test ("TMT") Parts A and B.[4] As to Plaintiff's fibromyalgia, the ALJ and the testifying medical expert concluded that the record was undeveloped because – despite ample evidence of a sustained fibromyalgia diagnosis – the record lacked specific documentation about trigger points; also, the ALJ specifically found that the evidence does not support a fibromyalgia diagnosis *because* Plaintiff "has not been evaluated by a rheumatologist." *See* AR at 31. Accordingly, on remand, the ALJ is **ORDERED** to procure a consultative examination by a rheumatologist such as to property develop the record in this regard. Lastly, the ALJ rejected Plaintiff's physical limitations, as opined in May of 2021 by Dr. Paul Lynn, because (1) the ALJ was unsure whether or not those limitations also applied during the disability period (*i.e.*, between June of 2017 and March of 2019); and (2) the ALJ was unsure about the basis on which Dr. Lynn had opined those limitations. *See* AR at 35. On remand, the ALJ is **ORDERED** to either subpoena Dr. Lynn to appear at a hearing, or to otherwise communicate or correspond with Dr. Lynn, in order to develop

---

[4] One way the ALJ may fulfill the obligation to develop the record is to order a consultative examination — that is, "a physical or mental examination or test purchased for [the claimant] at [the Administration's] request and expense." 20 C.F.R. §§ 404.1519, 416.919; *see also Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination.").

a clear record with regard to the medical basis for Dr. Lynn's opinions and their applicability to the disability period in question because "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry . . . [and] [t]he ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

As to Plaintiff's other claims (*see* Pl.'s Opp. (dkt. 18) at 1-4), on remand, the Commissioner is **ORDERED** to consider the other issues raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to reflect the fact that all the issues raised in this case by Plaintiff have been considered and addressed. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist. LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

For the reasons stated above – following the court's independent review of the record in Plaintiff's action for review under 42 U.S.C. § 405(g) – the court finds that the ALJ's non-disability decision in this case was not support by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (dkt. 15) is **GRANTED**, Defendant's Cross-Motion (dkt. 17) is **DENIED**. The case is remanded for further proceedings consistent with the findings and conclusions set forth herein.

**IT IS SO ORDERED.**

Dated: March 11, 2024

ROBERT M. ILLMAN
United States Magistrate Judge