United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GILLIAN K. O'CONNOR,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI,<br><br>          Defendant. | Case No.  22-cv-07019-RMI<br><br>**ORDER RE: DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT**<br>Re: Dkt. No. 21 |

Now pending before the court is Defendant's Motion to Alter or Amend Judgment (dkt. 21). In this Title II disability case, in which Plaintiff has proceeded *pro se*, the relevant disability period ranged from June of 2017 (the alleged onset date) and March of 2019 (the date last insured). *See* Order for Remand (dkt. 19) at 7. The court found that the evidentiary record established sufficient indicia that Plaintiff was – during this period – afflicted with migraine headaches, fibromyalgia, and other cognitive manifestations of her dyscognitive seizure disorder. *See id*. at 2-5. The court found that the ALJ erred at Step Two by finding that Plaintiff's migraines were non-severe, and by overlooking Plaintiff's memory deficits and other cognitive problems despite the existence of record evidence in support of both (those findings of the ALJ were not based on substantial evidence); the court also found that the ALJ improperly dismissed Plaintiff's fibromyalgia diagnosis because it was not unambiguously supported with record evidence of the requisite number of trigger points or a clear rheumatologist diagnosis (this finding was flawed because incomplete or "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). *See* Order for

1   Remand (dkt. 19) at 6-8. Accordingly, the court remanded the case with instructions to the

2   following effect:

> Regarding the state of the record, the court finds that the record is insufficiently developed ***as to the limitations*** occasioned by Plaintiff's migraines, the particulars of her fibromyalgia diagnosis, the details underlying her memory deficits and other cognitive issues related to her dyscognitive seizure disorder, and the physical limitations opined by Paul Lynn. As to Plaintiff's memory deficits and potential cognitive limitations associated with her dyscognitive seizure disorder, on remand, the ALJ is ORDERED to procure a consultative psychological examination that would include the administration of the following diagnostic instruments: the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), the Wechsler Memory Scale ("WMS-IV"), and the Trail Making Test ("TMT") Parts A and B. As to Plaintiff's fibromyalgia, the ALJ and the testifying medical expert concluded that the record was undeveloped because – despite ample evidence of a sustained fibromyalgia diagnosis – the record lacked specific documentation about trigger points; also, the ALJ specifically found that the evidence does not support a fibromyalgia diagnosis because Plaintiff "has not been evaluated by a rheumatologist." [] Accordingly, on remand, the ALJ is ORDERED to procure a consultative examination by a rheumatologist such as to property develop the record in this regard. Lastly, the ALJ rejected Plaintiff's physical limitations, as opined in May of 2021 by Dr. Paul Lynn, because (1) the ALJ was unsure whether or not those limitations also applied during the disability period (i.e., between June of 2017 and March of 2019); and (2) the ALJ was unsure about the basis on which Dr. Lynn had opined those limitations. [] On remand, the ALJ is ORDERED to either subpoena Dr. Lynn to appear at a hearing, or to otherwise communicate or correspond with Dr. Lynn, in order to develop a clear record with regard to the medical basis for Dr. Lynn's opinions ***and their applicability to the disability period***.

*Id.* at 7-8 (emphasis added).

The court also suggested that the ALJ may further develop the record in a number of other additional ways as well – including, but not limited to conducting another hearing (at which the ALJ could, for example, simply ask Plaintiff and her treating Physician about the limitations occasioned by these conditions during the relevant disability period). *See id*. at 8.

Defendant now asks the court to alter or amend the judgment because of the notion that the court erred in requiring the ALJ to develop the record rather than giving effect to the principle that a claimant must furnish medical and other evidence that can be used to reach a conclusion about medical impairments. *See* Def.'s Mot. (dkt. 21) at 3 (citing 20 C.F.R. § 416.912(a)). However, as stated above, and as set forth in the Order for Remand, Plaintiff's records <u>did</u> establish the

2

1  existence of the impairments mentioned above, which triggered the ALJ's duty to develop the
2  record as to the limitations occasioned by those impairments before glossing over Step Three and
3  formulating the RFC in this case. As mentioned, the ALJ improperly found Plaintiff's migraines
4  non-severe at Step Two; the ALJ simply ignored the evidence of Plaintiff's memory deficits and
5  other possible cognitive manifestations of her dyscognitive seizure disorder; and, the ALJ
6  improperly failed to develop the record as to Plaintiff's fibromyalgia. Thus, contrary to
7  Defendant's suggestion, Plaintiff did not fail in meeting her burden "to establish the existence of
8  one or more medically determinable impairments . . . that has lasted or was expected to last for a
9  continuous period of not less than twelve months, prior to her date last insured . . ." *See id*. at 3. As
10 to the question of whether or not these impairments rendered Plaintiff unable to engage in any
11 substantial gainful activity, the authorities in this Circuit overwhelmingly state that an ALJ's duty
12 to develop the record in this regard is further "heightened where the claimant may be mentally ill
13 and thus unable to protect her own interests." *See Tonapetyan*, 242 F.3d at 1150. Here, the ALJ
14 not only did not work to develop the record fully such as to protect Plaintiff's interests
15 (particularly in light of the fact that she was unrepresented and potentially suffering from one or
16 more mental impairments), instead, the ALJ relied on the fact that the record was undeveloped to
17 issue an adverse decision. Indeed, this is manifest because the ALJ did not even engage in the
18 basic task of asking Plaintiff _any_ questions about these impairments or their consequential
19 limitations during the relevant disability period.

20     As to the consultative examinations ordered by the court upon remand, Defendant also
21 complains that "consultative examiners do not review the longitudinal record and, thus have no
22 basis for determining a claimant's historical functional abilities." Def.'s Mot. (dkt. 21) at 4. In
23 essence, Defendant contends that "[a]n assessment of Plaintiff's functional ability five years after
24 her date last insured cannot reasonably relate back to her status on or before March 31, 2019." *Id*.
25 However, this statement is not categorically correct. *See e.g.*, *Pavel R. v. Kijakazi*, 2021 U.S. Dist.
26 LEXIS 218253, *16 (C.D. Cal. Nov. 10, 2021) ("Medical evaluations rendered after the date last
27 insured are both retrospective and relevant when they relate back to conditions and treatment that
28 existed during the insured period."); *see also Vaile v. Berryhill*, No. 5:16-cv-00393-GJS, 2017

3

U.S. Dist. LEXIS 99528, 2017 WL 2785331, at *3 (C.D. Cal. June 27, 2017) (finding medical records and opinion from after period of disability relevant because they related to treatment for conditions that existed during period of disability).

Additionally, the court is also unpersuaded by Defendant's incorrect claim that "consultative examiners do not review the longitudinal record." *See e.g., Nalley v. Apfel*, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000) ("[W]hen a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner."); *see also Shelley S. v. O'Malley*, 2024 U.S. Dist. LEXIS 20854, *50 (S.D. Cal. Feb. 6, 2024) ("Just as the consultative examiner in *Kendall*, who considered plaintiff's medical records, tests, diagnoses, and physical examinations, in addition to plaintiff's self-reports, in this case, Dr. Sial's opinion was based on his extensive review of Plaintiff's medical records, and Dr. Sial's physical, cervical spine, 'thoracolumbar spine,' and neurological examinations of Plaintiff, as well as Plaintiff's self-reports.") (citing *Kendall v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00825-PHX-JJT, 2023 U.S. Dist. LEXIS 58328, 2023 WL 2754003, at *4-5 (D. Ariz. Mar. 1, 2023)); *Hilda V.A. v. Kijakazi*, 2023 U.S. Dist. LEXIS 15634, *4 (C.D. Cal. Jan. 30, 2023) ("After reviewing Plaintiff's medical records, orthopedic consultative examiner [] Rajeswari Kumar, M.D., described the right-shoulder surgery as an 'open excision ... with synovial debridement and removal of loose bodies; roughly 70 removed.'"); *Rickey F. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 184691, *8 (W.D. Wash. Oct. 13, 2023) ("In March 2016, following an examination of Plaintiff and a review of Plaintiff's medical records, Dr. Gaffield diagnosed Plaintiff with diabetes in 'poor control,' back pain, and right knee pain.").

As to the court's order for the ALJ to solicit additional information from Plaintiff's treating physician, Dr. Lynn, regarding any limitations experienced by Plaintiff during the relevant disability period – Defendant's argument boils down to nothing more than splitting hairs. Defendant suggests that the ALJ's claim that Dr. Lynn did not state when the limitations first applied means that there was no evidence of limitations, not that the ALJ found that the evidence was ambiguous or incomplete. *See* Def.'s Mot. (dkt. 21) at 5. This is unpersuasive because the unavoidable fact is that the ALJ failed to render the necessary inquiries of either Dr. Lynn or

Plaintiff herself about limitations during the relevant disability period such as to develop a complete record, rather than (as stated above) relying on the incompleteness of the record (as to the limitations caused by the well-documented conditions) to issue an adverse decision in derogation of *Tonapetyan*, 242 F.3d at 115, and its progeny. As stated above, and in the Order for Remand, the ALJ's rejection of Dr. Lynn's opinion, and indeed the entirety of the ALJ's evaluations from Step Two forward, were unsupported by substantial evidence *because* of the ALJ's obvious errors in failing to develop the record in this case.

For these reasons, Defendant's request to alter or amend the judgment is **DENIED**. As for Defendant's request for clarification, that request is **GRANTED** to the extent that on remand the ALJ is **ORDERED** to furnish complete copies of Plaintiff's medical records for the review of each examiner that the ALJ has been ordered to procure for Plaintiff. The ALJ is also **ORDERED** to direct each of those examiners to examine Plaintiff in the manner described in the Order for Remand, while also reviewing the entirety of Plaintiff's relevant medical records and rendering written opinions as to the retroactivity of their findings as to Plaintiff's limitations and the applicability of those findings to the relevant disability period. The ALJ is **FURTHER ORDERED** to solicit from Plaintiff a self-report as to the limitations she may have experienced during the relevant disability period regarding the medical impairments described in the Order for Remand. Once these tasks are completed, the ALJ would then – and only then – have a fully and fairly developed record upon which to render a fair opinion as to the question of Plaintiff's disability during the period in question.

**IT IS SO ORDERED.**

Dated: April 4, 2024

ROBERT M. ILLMAN
United States Magistrate Judge